---



SO ORDERED,

*[signature]*

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

---

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: RACHEL A. HARRIS | CASE NO.: 21-11723-SDM |
| DEBTOR | CHAPTER 13 |
| JIMMY DOYLE YOUNG | PLAINTIFF |
| v. | ADV. PRO. NO.: 22-01021-SDM |
| RACHEL A. HARRIS | DEFENDANT |

### MEMORANDUM OPINION AND ORDER ON NONDISCHARGEABILITY

This adversary proceeding is before the court on the Creditor/Plaintiff, Jimmy Young's ("Young"), *Complaint to Determine Dischargeability and for Judgment* (the "Complaint") (A.P. Dkt. #1).[1] The Court conducted a trial on March 19, 2024, and at the conclusion of trial took the legal issues under advisement. After carefully considering the pleadings, evidence, and arguments, the Court is now prepared to rule. The Court finds that Young is entitled to prevail on his breach of contract claim, warranting a judgment in his favor for $6,000.00. Young did not, however,

---

[1] Any citations to the underlying bankruptcy case docket will be (Dkt. #___), while any citations to the adversary proceeding docket will be (A.P. Dkt. #___).

succeed in demonstrating the Debtor/Defendant, Rachel Harris's ("Harris") liability for fraudulent or negligent misrepresentation or the necessity for punitive damages. In addition, Young did not satisfy the evidentiary requirements for nondischargeability under § 523(a)(3), and by extension, § 523(a)(2)(A). Further, because § 523(a)(6) is not applicable in Chapter 13 bankruptcy cases, Young is not entitled to any relief under that Bankruptcy Code provision. Consequently, any claim Young might assert in the underlying bankruptcy case for $6,000.00 is not excepted from discharge.

## I.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C §§ 157 and 1334. The classification of this matter as "core" or "non-core" will be discussed more below.

## II.    BACKGROUND AND FACTUAL FINDINGS

This adversary proceeding originated over money loaned in the form of an open account from Young to his child-hood friend, Harris. The parties stipulated to some facts as articulated in the Court's *Pretrial Order* (A.P. Dkt. #13), but other facts as discussed in this section, although not agreed to, are gleaned by the Court from the evidence presented at trial. To begin, Harris filed her Chapter 13 voluntary petition (the "Petition") on September 14, 2021. (Dkt. #1). Before Harris filed her Petition, Harris received a total of $6,000.00 from Young over approximately seven months beginning on December 16, 2018 and ending on July 19, 2019.[2] Prior to the last payment of approximately $1,000.00 in July of 2019, the parties agreed that Harris would repay Young after she received an unknown amount of funds from the sale of her mother's house.[3]

---

[2] The evidence is clear that Young took no security interest in Harris's mother's house. Further, Young is not alleging that the $6,000.00 is secured by any property of the Debtor or bankruptcy estate.

[3] In addition, according to Young's testimony and Facebook messenger messages between the parties, Harris offered to begin making monthly payments of $100.00 in July of 2019 until her

Despite this agreement, Harris failed to pay Young after the house sold on or around May 29, 2020. Further, Harris communicated to Young that the house was being rented and had not sold as late as April 13, 2022. Interestingly, when Harris filed her Petition, schedules, and other documents in September of 2021, Harris omitted Young as a Creditor. See Dkt. #'s 1, 12, and 16. Because Harris failed to list Young as a prepetition Creditor, Young did not receive notice of the bankruptcy filing and missed the deadline to file any proof of claim or object to discharge of Harris's debt.

After Young made multiple inquires to Harris regarding the sale of her mother's house sometime in April of 2022, and fearing that the statute would run on any collection action against Harris, Young filed suit in the County Court for Lee County, Mississippi on July 15, 2022. After learning that Harris filed for bankruptcy relief in this Court, Young moved to voluntarily dismiss the state court action on August 2, 2022. On August 16, 2022, Young sought relief from the automatic stay to continue collection efforts in state court. See *Motion for Relief from the Automatic Stay* (the "Motion for Relief"), Dkt. #43. Young eventually agreed to have the Court deny his Motion for Relief and commenced this adversary proceeding on December 8, 2022. See *Complaint*, A.P. Dkt. #1. On January 9, 2023, Harris filed her *Answer to Complaint* (A.P. Dkt. #4), which consisted of general admissions and denials and asserted the statute of limitations as a defense. The Court conducted a pretrial conference on November 9, 2023, and the Pretrial Order was entered on December 6, 2023 setting trial for March 19, 2024.

---

mother's house sold "hopefully" after the first of the year (in 2020). But Young never indicated in his testimony whether the parties actually agreed to any monthly payment obligation prior to the sale of Harris's mother's house.

At trial, Young and his counsel were present along with Harris's counsel, but Harris did not attend. Young was also the only party to testify.[4] Besides testimony and documents supporting the Court's findings of facts above, Young testified that for much of the time between 2019 and 2021 he was living abroad for work and rarely, if at all, inquired as to whether the house had sold or when he was going to be repaid. Young further testified that while he and Harris continued to maintain contact "a time or two" via Facebook messenger in 2021, in addition to at least one in person meeting during that year, Young never brought up Harris's failure to repay him. Young also testified Harris never mentioned that she filed bankruptcy or her mother's house sold. Finally, Young testified that he did not know why Harris failed to list him as a Creditor.[5]

### III.    DISCUSSION AND LEGAL CONCLUSIONS

The parties' legal arguments are straightforward. Young argues that he is still owed the $6,000.00 for Harris's failure to repay the money loaned to her, and that the $6,000.00 loaned is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6).[6] Harris argues that Young's state law claims are barred by the statute of limitations. Conversely, Young alleges that the statute of limitations for collecting on his debt under state law was tolled by the filing of his state court action and by Harris's fraudulent concealment of the sale of the house and her bankruptcy filing, which

---

[4] To support his testimony, Young introduced eight exhibits, which the Court admitted in evidence without objection. Those exhibits consisted of text and Facebook messenger messages between Young and Harris, Young's state court complaint and voluntary dismissal, Harris's bankruptcy schedules and creditor matrix, and the warranty deed conveying Harris's mother's house. Ex. 1-8. Notably, the warranty deed conveying the house at the time of sale included Harris as a grantor. Ex. 2.

[5] As of the date of the trial, Harris had not amended her schedules to include Young as a prepetition Creditor. Similarly, Young had not filed any formal proof of claim.

[6] Any later statutory references will be to title 11 of the United States Code, unless noted otherwise. Further, shortly before trial, the parties agreed to amend the Pretrial Order to include, as a contested issue, whether the debt was nondischargeable under § 523(a)(3). The Court will address this issue more thoroughly below, including the applicability of § 523(a)(6) in this adversary proceeding.

Young alleges was an attempt to prevent collection amounting to fraud itself. Young's counsel also argued that due to this alleged concealment and misrepresentation, Young lacked notice and actual knowledge of the bankruptcy and missed the deadline to timely file a proof of claim or object to discharge. In response, Harris's counsel argues that Harris was either under the impression she was not required to repay Young or simply forgot to include Young on her schedules due to the length of time between the last loan payment and the filing of Harris's Petition.

## A.    Jurisdiction

Before reaching the substantive issues raised in this proceeding, the Court must determine, sua sponte, whether it has jurisdiction to enter judgment as to Harris's debt underlying Young's alleged claims.[7] *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999) ("Federal courts must be assured of their subject matter jurisdiction at all times and may question it sua sponte"). The Fifth Circuit, along with the Second, Seventh, Eighth, and Ninth Circuits, have determined that bankruptcy courts have jurisdiction to enter judgment on claims where the outcome of such claims could affect the bankruptcy estate. See *In re Morrison*, 555 F.3d 473, 478 (5th Cir. 2009). The jurisdiction of bankruptcy courts, like that of other federal courts, "is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). Under 28 U.S.C. § 1334, district courts have exclusive jurisdiction of all bankruptcy cases under title 11 and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1334. Bankruptcy jurisdiction is exercised either as "core" in cases that invoke a right provided by title 11 or that could only arise in the context of a bankruptcy, or "related to",

---

[7] The parties did consent to entry of final judgment by this Court in the Pretrial Order. See *Pretrial Order*, A.P. Dkt. #13.

where the outcome could have any conceivable effect on the estate. *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).

Here, Young's request for a declaration of nondischargeability is a core proceeding under 28 U.S.C. § 157(I), and it falls under claims arising from the Bankruptcy Code because bankruptcy discharges are a form of relief established by federal bankruptcy law. While entering judgment on a contract dispute against Harris may not qualify as a core proceeding independently, the resolution of the underlying contract and common law claims, i.e., whether Young has valid state law claims against Harris, could impact the bankruptcy estate and distributions to unsecured Creditors. Consequently, this Court has jurisdiction not only to render judgment regarding nondischargeability but also to determine the validity of Young's state law claims and amount of damages, if any, Harris owes Young under those state law claims.

**B.      Statute of Limitations**

Both parties raised the issue of the statute of limitations in this proceeding:[8] Harris raises it as a defense barring Young's collection action on an open account, and Young posits that it tolls what would typically be a time-barred cause of action. As such, the Court must address these issues before addressing the merits of Young's claims. Young's Complaint included a cause of action for failure to pay an open account and for fraud and misrepresentation, so the Court will address each in turn. Mississippi Code Annotated § 15-1-29 provides the following:

> Except as otherwise provided in the Uniform Commercial Code, actions on an open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three (3)

---

[8] The Court points out that while the Pretrial Order included the applicability of the statute of frauds defense as a contested legal issue, Harris failed to raise the statute of frauds as a defense in her Answer. Therefore, to the extent that the statute of frauds may have been applicable as a defense, Young's assertion that Harris waived the defense is correct. See *Canizaro v. Mobile Communications Corp. of America*, 655 So.2d 25, 30 (Miss. 1995); Fed. R. Civ. P. 8(c)(1).

years next after the cause of such action accrued, and not after, except that an action
based on an unwritten contract of employment shall be commenced within one (1)
year next after the cause of such action accrued, and not after.

Miss. Code Ann. § 15-1-29. In Mississippi, the period of limitations for an action to recover on an

open account, when not between merchants, commences to run against each item (or transaction)

individually, from the dates at which the same became due and payable. Miss. Code Ann. § 15-1-

31. Even so, an acknowledgment of indebtedness and a renewed promise to pay are adequate to

toll the statute of limitations according to Mississippi Code Annotated § 15-1-73, provided it is in

writing, specifies the due date for the balance, identifies the recipient of the balance, and outlines

the purpose for which the balance is owed. *Harrison Enterprises, Inc. v. Trilogy Communications,*

*Inc.*, 818 So.2d 1088, 1092 (Miss. 2002). In addition to tolling the statute, parties can mutually

determine the due date of an open account, thereby establishing when the statute of limitations

starts to accrue. *Anderson v. Lancaster*, 215 Miss. 179, 183 (Miss. 1952).

Regarding the statute of limitations for fraud and misrepresentation, the Mississippi

Supreme Court has held that the three-year statute of limitations in Mississippi Code Annotated

§ 15-1-49 applies to claims for fraud and misrepresentation. *American Banker's Ins. Co. of Fla. v.*

*Wells*, 819 So.2d 1196, 1200 (Miss. 2001). Under Mississippi Code Annotated § 15-1-49, the

statutory period begins to run when the plaintiff has discovered, or by reasonable diligence should

have discovered, the injury. Miss. Code. Ann. § 15-1-49. In other words, the statute of limitations

begins to run when the plaintiff discovers or should have discovered the misrepresentation.

*Fletcher v. Lyles*, 999 So.2d 1271, 1277 (Miss. 2009).

Turning back to facts of this proceeding, Young made the initial payment to Harris on

December 18, 2018, followed by subsequent payments over the next seven months. Based on the

timing of payments, a breach of contract action to recover on this open account would likely be

barred by the three-year statute of limitations. But further evidence produced at trial mandates a different outcome. Prior to Young's last loan payment on or around July 19, 2019, Harris, via written messages, acknowledged the entire amount of the debt owed and promised to pay it to Young in full upon the sale of her mother's house. This writing, which acknowledged the indebtedness, contained a renewed promise to pay, indicated who would be paid and the reasons for the payment, is sufficient to qualify as an acknowledgment of indebtedness under Mississippi law. Accordingly, the date on which Young's cause of action accrued would be the date on which Harris's mother's home sold on or around May 29, 2020 and Harris's subsequent failure to pay. Young filed this adversary proceeding on December 18, 2022. Therefore, Young commenced this action within three years of the date on which the cause of action for failure to pay an open account accrued.

The result of Young's claim for fraud and misrepresentation is the same. According to Young's testimony and the documentary evidence, Harris's mother's house sold on May 29, 2020. No cause of action for misrepresentation could have been brought prior to that date because Harris could not have made any alleged misrepresentations until after the sale of her mother's house. Young initiated this adversary proceeding on December 18, 2022, less than three years from the date Harris could have made any misrepresentation about the sale of her mother's house. Therefore, Young's claim for fraud and misrepresentation is timely as well. While Young argued that Mississippi's fraudulent concealment statute and the filing of the state court action would toll the statute of limitations on his state law claims, the Court need not address those arguments as it has already determined that Young timely asserted his state law claims in this adversary proceeding.

**C.    Nondischargeability Analysis**

Having determined that the Court has jurisdiction to render judgment on all of Young's claims, and that Young's claims are not barred by the statute of limitations, the Court will next determine if the debt underlying the claim is nondischargeable. The determination of nondischargeability is a two-step process. See *In re Burkhalter*, 635 B.R. 284, 289 (Bankr. N. D. Miss. 2022). Before looking to the Bankruptcy Code provisions governing nondischargeability, courts must determine if the creditor holds a valid claim against the debtor. *Id*. Then, if successful, the plaintiff must demonstrate how and why the claim is nondischargeable. *Id.* Because the validity of a creditor's claim is governed by state law, courts must look to the state law giving rise to the cause of action. *In re Blankenship*, 525 B.R. 629 (Bankr. N.D. Miss 2015) (internal citations omitted). Accordingly, the Court will first look to Mississippi law to determine the merits of Young's causes of action.

1.  Step One: Claim Validity

*a. Count Three – Failure to Pay Open Account*

Young's primary allegation is that Harris is liable for her failure to repay the $6,000.00 loaned to her on open account. Here, there is no dispute that the agreement between Young and Harris is an open account, evidenced by the fact that the parties stipulated to it in the Pretrial Order. Further, the Parties stipulated to the exact amount owed, $6,000.00. Considering the evidence and Young's undisputed testimony that Harris has yet to repay the loan, and the Court's determination that the statute of limitations does not bar this action, Young does indeed hold a valid claim against Harris for $6,000.00.

*b. Count Two – Misrepresentation and Fraud*

In Count Two, Young alleges that Harris's lie about the sale of her mother's home constitutes misrepresentation and fraud. While Young failed to cite or refer to any specific legal authority to support these claims, Young's claims appear to be a general fraudulent misrepresentation claim under Mississippi's common law fraudulent misrepresentation theory. Mississippi recognizes two separate causes of action in relation to misrepresentations, fraudulent or intentional misrepresentation and negligent misrepresentation. *Spraggins v. Sunburst Bank*, 605 So.2d 777, 780 (Miss. 1992). To establish a claim for fraudulent misrepresentation, a plaintiff must prove by clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) the speakers intent that it should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Id*. Further, the representation made must concern a past or present fact in contrast with a promise of future conduct. *Id*. Recovery is not permitted if the proximate cause of the loss is other than the fraud alleged. *Russel v. Southern National Foods, Inc.,* 754 So.2d 1246, 1256 (Miss. 2000).

Similarly, to bring a claim for negligent misrepresentation, a plaintiff must show the following: (1) a misrepresentation or omission of fact; (2) the materiality or significance of the representation or omission; (3) failure to exercise reasonable care on the part of the defendant; (4) reasonable reliance on the misrepresentation or omission; and (5) damages as a direct and proximate result of such reasonable reliance. *Spraggins*, 605 So.2d at 780. Just like intentional misrepresentation, a claim for negligent misrepresentation may not be predicated on a promise relating to future actions. *Id*.

Here, Young's testimony and the documentary evidence do not prove by clear and convincing evidence that he is entitled to relief under either fraudulent or negligent misrepresentation. The evidence shows that Harris represented to Young that (1) her mother's house had not sold when in fact it had sold; (2) the sale of the home triggered the timing for repayment; and (3) Harris knew the home had sold evidenced by her signature as a grantor on the deed. Therefore, Young has proven Harris made a misrepresentation of fact and that the representation was material as it related to the debt becoming due. Young also proved he relied on this representation by deferring his attempts to collect on the debt. Young failed, however, to provide any evidence, or even allege, that he suffered injury because of his reliance on the representation concerning the sale of Harris's mother's house—an omission fatal to both causes of action.

It is clear to the Court that Harris's untruthful statement, while related to the timing of repayment, is not the cause of Young's underlying injury. Regardless of the justification for failing to repay Young, the only injury Young suffered is simply that he was never repaid, an outcome not contingent on the alleged misrepresentation. Because Young has not provided any evidence that he suffered injury because of his reliance on the misrepresentation, he failed to meet the requisite burden of proof. Thus, based on the lack of clear and convincing evidence establishing that Young suffered injury because of Harris's statements regarding the sale of her mother's house, Young has failed to show he entitled to judgment in his favor as to these claims.

### c. Punitive Damages and Attorney's Fees

Young is also seeking $2,000.00 in attorney's fees justified by some nominal award of punitive damages. The Court does not find that the award of punitive damages and attorney's fees is warranted here. Before punitive damages and attorney's fees may be awarded, there must be an

award of compensatory damages. *Purvis v. Barnes*, 791 So.2d 199, 203 (Miss. 2001). Further, in Mississippi, an award of punitive damages is within the discretion of the trier of fact. *Bar-Til Inc. v. Superior Asphalt Inc.,* 164 So.3d 1028, 1031 (Miss. Ct. App. 2014). Generally, in the absence of statutory or contractual provisions, attorney's fees are not recoverable in contract disputes unless the facts justify the imposition of punitive damages. *In re Clardy*, 190 B.R. 552, 556 (Bankr. N.D. Miss. 1995). Punitive damages are only appropriate in "extreme cases" and should be awarded only within "narrow limits". *Bryant v. Alpha Entertainment Corp.,* 508 So.2d 1094, 1098 (Miss. 1987).

Based on the facts here, the only argument advanced by Young which would justify an award of attorney's fees is the imposition of punitive damages based on the circumstances surrounding Harris's failure to repay the $6,000.00. In addition, because Young's cause of action for failure to repay an open account is the only claim in which he is entitled to recover compensatory damages, the breach of contract/failure to repay open account is the only cause of action under which he would be entitled to punitive damages. The Court, however, will not award punitive damages, or attorney's fees, in this proceeding. The Court believes that comparing the current facts to a hypothetical is instructive. Here, Harris promised to repay Young but simply failed to do so. This situation is no different than one in which a borrower promises to repay a creditor when she receives her next paycheck and then fails to pay. Even if the borrower may have falsely claimed that she had been ill or unable to work and had not been paid, the result is the same: the creditor received no payment. Just like the illustration above, Harris made an untrue statement about why Young had not received payment, i.e., her mother's house had not sold when in fact it had sold. Nevertheless, just as the Court discussed in its analysis of Young's misrepresentation claims, Young suffered no additional harm due to Harris's untrue statement. Based on these facts,

the Court does not believe that the current proceeding falls within the "extreme cases" or "narrow limits" in which punitive damages should be awarded. Accordingly, the Court will not award punitive damages or attorney's fees.

Having examined the state law giving rise to Young's claims, the Court finds that the only cause of action upon which Young is entitled to relief is for Harris's failure to repay the open account. Because Young has not shown that he is entitled to judgment regarding his fraud and misrepresentation claim, or that Young is entitled to punitive damages or attorney's fees, the amount of his judgment or claim will not exceed the $6,000.00 representing compensatory damages for the underlying unpaid debt. Based on the above, the Court finds that Young is only entitled to relief in the amount of $6,000.00.

2. Step Two: Nondischargeability

Because Young holds a valid claim in the amount of $6,000.00 and is not entitled to any additional damages, the Court now turns to the question of whether that debt should be excepted from discharge. While the parties' legal arguments seem simple on their face, analyzing the applicability of certain Bankruptcy Code provisions as pled in the Complaint and agreed to in the PreTrial Order require a more in-depth discussion. As mentioned above, the parties agreed to include § 523(a)(3) as a basis for this Court to find Harris's debt nondischargeable.[9] The Court must also address the merits of Young's argument that § 523(a)(6) serves as basis for the nondischargeability relief pled in his Complaint.

---

[9] Federal Rules of Civil Procedure, Rule 15(b)(2), expressly allows issues not raised in the pleadings to be raised and argued at trial. While the plaintiff did not raise the issue of nondischargeability under § 523(a)(3) in his Complaint, the parties agreed to amend the Pretrial Order to include the issue. Therefore, whether the debt is nondischargeable under § 523(a)(3) shall be treated as if raised in the pleadings. See Fed. R. Civ. Pro. 15(b)(2); *Portis v. First Nat. Bank of New Albany, Miss.*, 43 F.3d 325, 332 (5th Cir. 1994).

*a. Discharge in Chapter 13 and Timing of Young's Complaint*

Section 1328(a) provides that a chapter 13 debtor who has completed payments under a plan be granted a discharge of all debts provided for by the plan except any debt " . . . (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a) . . . ." 11 U.S.C. 1328(a)(2). This is a broader discharge than is available under chapter 7, 11 or 12, as the standard chapter 13 discharge will discharge a debtor from some types of debts listed in § 523(a). 4 COLLIER ON BANKRUPTCY, ¶ 523.02 (16th ed. 2024). Further, § 523(c) provides that debts of the kind described in § 523(a)(2), (4), and (6) are discharged unless, upon request of the creditor, the bankruptcy court determines that the debt is excepted from discharge. *Salard v. Salard*, 781 F.Supp.2d 363, 366 (W.D. La. 2011). It is well established that any exceptions to discharge should be strictly construed in favor of dischargeability. *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997). In an action to determine the nondischargeability of a debt, the party promoting the exception to discharge must prove by a preponderance of the evidence that the debt is nondischargeable. *In re Buck*, 2023 WL 3394938, at *3 (Bankr. N.D. Tex. May 11, 2023).

Federal Rules of Bankruptcy Procedure, Rule 4007,[10] provides that a complaint requesting the bankruptcy court make such a determination be filed no later than 60 days after the date set for the meeting of creditors. Fed. R. Bankr. P. 4007(c). Indeed, the last day to object to dischargeability in Harris's underlying case was December 20, 2021—almost a year before Young filed this adversary proceeding.[11] Even though Young's counsel and Harris's bankruptcy counsel agreed to give Young 30 days from November 15, 2022 to file this adversary proceeding in the Court's Order

---

[10] Any later references to the Federal Rules of Bankruptcy Procedure will simply be referred to as "Bankruptcy Rule".

[11] The deadline for filing of proof of claims in the underlying bankruptcy case expired on November 23, 2021.

on the Motion for Relief (Dkt. #53), the Court is not aware of any authority which permits a creditor to object to discharge under § 523(a)(2)(A) or (a)(6) as pled here—unless that objection is brought under § 523(a)(3) as discussed more below—once the deadline to object to dischargeability has expired.

Despite the untimeliness of Young's Complaint under § 523(a)(2)(A) and (a)(6), the Bankruptcy Code specifically provides for situations in which a creditor failed to receive notice in time to timely file a proof of claim or meet the discharge objection deadline. Under § 523(a)(3), a discharge does not discharge any debt neither listed nor scheduled if such debt is of the kind specified in subsections (2), (4), or (6) of § 523(a), unless the creditor had notice or actual knowledge of the case in time to timely file and request a determination as to dischargeability. 11 U.S.C. § 523(a)(3)(B). While the Fifth Circuit has generally interpreted § 523(c) as placing a heavy burden on the creditor by automatically discharging debts of this kind unless the creditor requests a determination as to dischargeability, the one exception arises when the debtor fails to schedule the creditor and the creditor had no notice of actual knowledge in time to file their claim and request a determination of nondischargeability. *Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987). Consequently, under Bankruptcy Rule 4007(b), a complaint to determine the dischargeability of a debt under § 523(a)(3) may be filed at any time. Fed. R. Bankr. P. 4007(b). Young, then, has an adequate remedy to challenge the dischargeability of Harris's debt, even though the time for filing a complaint under § 523(a)(2), (4) or (6) has already run.

### b. 11 U.S.C. § 523(a)(3) Generally

A more thorough discussion of § 523(a)(3) is appropriate considering Young's allegations that Harris's debt is nondischargeable under § 523(a)(3) because Harris failed to list or schedule Young as a Creditor, and Young had no notice or actual knowledge of Harris's bankruptcy to timely

file a proof of claim and object to discharge. Section 523(a)(3) provides that a discharge does not

discharge an individual debtor from any debt . . .

> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

>> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

>> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request. . . .

11 U.S.C. § 523(a)(3).

As to § 523(a)(3)(A), the Fifth Circuit has established the so-called *Robinson* factors to

determine whether a debtor's failure to list a creditor will prevent discharge of the unscheduled

debt: (1) the reasons the debtor failed to list the creditor; (2) the amount of disruption (to the courts)

which would likely occur; and (3) any prejudice suffered by the listed creditors and the unlisted

creditor. *Buck*, 2023 WL 3394938, at *4 (citing *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 290

(5th Cir. 1994)). The driving principle behind § 523(a)(3)(A) is notice to the creditor that a

bankruptcy case is pending and that the creditor's rights may be affected. *In re Ricks*, 253 B.R.

734, 739 (M.D. La. 2000). Put simply, the requirement contained in § 523(a)(3)(A) of sufficient

notice to allow the "timely" filing of a proof of claim protects the right of a creditor to participate

in distribution of the debtor's estate. *Id.* at 744. Section 523(a)(3) is to be "construed with an eye

toward the equitable principles which underlie the bankruptcy law." *In re Stone,* 10 F.3d at 290.

On the other hand, § 523(a)(3)(B) "gives [a] creditor deprived of notice of the deadline the

opportunity to assert nondischargeability claims arising under § 523(a)(2), (4) and (6) as

subcomponents of a § 523(a)(3) claim." *In re Mazik*, 592 B.R. 604, 613 (Bankr. E.D. Pa. 2018). A

creditor must prove up the merits of its nondischargeability claim under § 523(a)(2), (4), or (6). *In re Schott*, 2011 WL 832936, at *2 (Bankr. W.D. Tex. Mar. 4, 2011) (citing *Jones v. Warren Construction (In re Jones),* 296 B.R. 447, 451 (Bankr. M.D. Tenn. 2003)).

From this Court's perspective, § 523(a)(3) has a few moving parts. As to both § 523(a)(3)(A) and (B), the Court must determine whether the creditor had notice or actual knowledge of the bankruptcy filing, because notice or actual knowledge of the bankruptcy case would defeat a creditor's nondischargeability claim under § 523(a)(3). But the Court must also determine the type of debt, i.e., whether the debt is "of the kind" contained in § 523(a)(2), (4), or (6), to determine which subsection of § 523(a)(3) is applicable—(A) or (B).

### i. Notice or Actual Knowledge

The Court can quickly dispense with whether Young received notice or had actual knowledge of Harris's bankruptcy case to timely file a proof of claim or object to discharge. A creditor must have received actual notice, not constructive notice or imputed knowledge, for a debtor to defeat a nondischargeability claim under § 523(a)(3). *Small Bus. Ass'n v. Bridges*, 894 F.2d 108, 112 (5th Cir. 1990). The burden of proof rests with the debtor to show that a creditor had notice or actual knowledge under § 523(a)(3), such that he had time to timely file a proof of claim or object to discharge. *In re Faden*, 96 F.3d 792, 795 (5th Cir. 1996).

Here, Harris failed to meet her burden to show that Young received notice of or had actual knowledge of her bankruptcy case. In fact, Harris's counsel made no argument regarding notice or knowledge in any pleadings or at trial. It is clear to the Court that Harris never scheduled Young as a Creditor. Further, the only evidence the Court has before it regarding Young's notice or knowledge is Young's testimony that he only became aware of Harris's bankruptcy after Young

filed the state court action. The Court, therefore, finds that Young did not have actual notice or knowledge of Harris's bankruptcy case to timely file a proof of claim or object to discharge.

### ii. Merits of Young's Nondischargeability Claim(s) under § 523(a)(2)(A) and (a)(6)

Young argues that due to Harris's failure to repay him after Harris's mother's house sold, any debt determined to be owed should be nondischargeable under the exception to discharge found in § 523(a)(2)(A). Section 523(a)(2)(A) excepts from discharge debts for money, property, services, or an extension renewal, or refinancing of credit if obtained by fraud or false pretense. 11 U.S.C. § 523(a)(2)(A). The purpose of this provision is to prevent a debtor from retaining the benefits of property fraudulently obtained, and therefore, a debtor must have received the money because of false representations or actual fraud. *In re Hunt*, 605 B.R. 758, 777 (Bankr. N.D. Tex. 2019) (internal citation omitted). The Fifth Circuit distinguishes between "actual fraud" and "false pretenses and representations," creating two separate paths to determine dischargeability under § 523(a)(2)(A). *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991), *overruled on other grounds as recognized by In re Ritz*, 832 F.3d 560, 565 n.3 (5th Cir. 2016). Generally, a debtor's failure to fulfill a mere promise is insufficient to render a debt nondischargeable. *Hunt*, 605 B.R. at 777. Conversely, a debtor's failure to fulfill contractual obligations could make a creditor's claim nondischargeable if such debtor had no intention of performing the obligations under an agreement at the time it was entered. *Id.*

False representations that could render a debt nondischargeable are those that are knowingly and fraudulently made that materially concern the transaction at issue. *Hunt*, 605 B.R. at 777.  In addition, the party to whom the representation is made must have justifiably relied on those statements. Courts have crafted several elements for a debtor's representations to be a false

representation or false pretense: "(1) a knowing and fraudulent falsehood; (2) describing past or

current facts; (3) that was relied upon by the other party." *Blankenship*, 525 B.R. at 639.

Actual fraud is "anything that counts as 'fraud' and is done with wrongful intent," as

opposed to "acts of deception . . . without the imputation of bad faith or immorality." *Husky Int'l*

*Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016). Actual fraud may be proved by establishing the

following elements:

(1) the debtor made the representation;
(2) at the time they were made the debtor knew they were false;
(3) the debtor made the representations with the intention and purpose to deceive
the creditor;
(4) that the creditor relied on such representations; and
(5) that the creditor sustained losses as a proximate result of the representations.

*Selenberg v. Bates*, 856 F.3d 393, 398 (5th Cir. 2017). An allegation of actual fraud requires

scienter, and the underlying conduct involves "moral turpitude or intentional wrong". *Hunt*, 605

B.R. at 778. Thus, debts arising from constructively fraudulent conduct are dischargeable under

§ 523(a)(2)(A). *Id.*

In this proceeding, Young alleges that Harris obtained the $6,000.00 by fraud or false

pretenses. The evidence presented at trial, however, does not establish that Harris made knowingly

false representations to obtain any of the funds received from Young. Further, Young's own

evidence and testimony indicates that the majority of the $6,000.00 had already been provided to

Harris before the parties agreed on the time for repayment, i.e., the time at which Harris made the

allegedly fraudulent statement.  Indeed, Harris could have intended to repay Young when she made

the promise to pay after her mother's house sold and simply failed to do so post-sale. While the

evidence shows Harris failed to repay Young as agreed and did not disclose the sale of her mother's

house, Harris's mere failure to fulfill the contractual obligation to repay Young after her mother's

house sold is insufficient to establish fraud under § 523(a)(2)(A). More germane to this Bankruptcy Code provision, Young provided no evidence to suggest that Harris lacked the intention of repaying Young *at the time the agreement was made*. Therefore, Young has not met his burden of proving by a preponderance of the evidence that the debt is nondischargeable under § 523(a)(2)(A) based on actual fraud or false pretenses.

Turning to § 523(a)(6), Young has a problem. Section 523(a)(6) provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. 523(a)(6). But as mentioned above, § 1328 governs discharges in chapter 13 cases. Section 1328(a)(2) lists the debts excepted from discharge and notably, § 523(a)(6) is not listed. Therefore, § 523(a)(6) does not apply to chapter 13 bankruptcy filings. See *In re Winstead*, 605 B.R. 432, 442 (Bankr. S.D. Miss. 2019).

Despite § 523(a)(6)'s inapplicability here[12], the Court believes that a discussion as to any alternative to § 523(a)(6) in a chapter 13 bankruptcy case may assist practitioners in the future. Specifically, while § 523(a)(6) may not apply to prevent a debtor seeking relief under chapter 13, Young could have presented an argument under § 1328(a)(4),[13] which specifically exempts from discharge any debt for "restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." 11 U.S.C. 1328(a)(4). It is, however, well settled that § 1328(a)(4)

---

[12] Section 523(a)(3) does allow creditors to seek a determination of nondischargeability under § 523(a)(2), (4), and (6) beyond the discharge objection deadline as subcomponents of that claim. The Court, however, is not aware of any precedent that allows creditors to assert nondischargeability on grounds other than those specifically enumerated in § 523(a)(3), which fails to include § 1328(a)(4). Nevertheless, for reasons discussed below, were it permitted, it is unlikely that Young would have prevailed.

[13] Young did not plead § 1328(a)(4) in the Complaint, but the Pretrial Order included nondischargeability under § 1328 as a contested issue of law. See *Pretrial Order*, A.P. Dkt. #13.

excludes debts arising from injuries to *property* from the scope of the statute. *In re Bailey*, 555 B.R. 557, 561 (Bankr. N.D. Miss. 2016) (quoting *In re Deluty*, 540 B.R. 41, 47 (Bankr. E.D.N.Y. 2015)) (*emphasis added*).[14] By limiting this discharge exception to personal injuries and death, Congress created an important distinction between a personal injury and injuries to property. *Id*. This distinction is reinforced by the exclusion of § 523(a)(6) from the sections enumerated in § 1328(a)(2), which lists the types of debts excepted from discharge in chapter 13 cases. *Id.*

While the Court is on the subject, there is still a question of what qualifies as a "personal injury" under § 1328(a)(4). The narrow approach refers solely to bodily or physical injury, the second approach reads personal injury to include non-physical injuries such as defamation, sexual harassment, discrimination, and emotional distress, but not business or financial injuries, while the third and broadest approach could include business and financial injuries if they are defined as a personal injury tort under non-bankruptcy law. See *In re Adams*, 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012). The Fifth Circuit has not selected a test, but another court in the Northern District of Mississippi in *Bailey* (cited above) adopted the middle approach after examining the language of the statute in comparison to Congress's use of the term "personal injury" in other statutes, as well as the Fifth Circuit's decisions interpreting "personal injury" under other statutes. See *Bailey*, 555 B.R. at 562-63. The court there ultimately held that personal injury under § 1328(a)(4) "may include non-physical injuries, so long as the underlying cause of action is personal in nature and not economic only." *Id*. at 564.

This Court would be inclined to agree with the court in *Bailey* and adopt the middle approach. So the Court must look to the underlying cause of action that led to the alleged injury to

---

[14] It is not necessary that the award be entered before the bankruptcy petition is filed. *In re Adams*, 478 B.R. 476, 483-84 (Bankr. N.D. Ga. 2012).

determine whether the injury was, in fact, personal or is simply an injury to property. *Adams*, 478 B.R. at 487. This inquiry will be short-lived. It is clear to the Court after review that the injury to Young is simply a financial injury (or injury to property) for Harris's breach of contract. Young's injury, therefore, renders any claim Young could have pled under § 1328(a)(4) unsuccessful. Now that the Court has determined that Young's claim is not excepted from discharge based on the Bankruptcy Code provisions as components of his § 523(a)(3)(B) claim, including a timely filed claim under § 1328(a)(4), the Court must now assess Young's nondischargeability claim under § 523(a)(3)(A).

### iii. Application of § 523(a)(3)(A)

Because the Court has found that Young has not prevailed the merits of his nondischargeability claim under § 523(a)(2)(A), and that § 523(a)(6) is not applicable, the Court must simply determine whether § 523(a)(3)(A) serves as a basis for the $6,000.00 to be excepted from discharge utilizing the above-mentioned *Robinson* factors. The first factor pertains to the reasons a debtor failed to list a creditor. In the Fifth Circuit, a court should not discharge a debt under § 523(a)(3) if a debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive. *Stone*, 10 F.3d at 291. If the failure is attributable solely to negligence or inadvertence, however, equity points toward discharge of the debt. *Id.* Here, no party produced any evidence that Harris's failure to schedule Young as a Creditor was intentional or fraudulent. Indeed, the only testimony related to Harris's reasons for failing to list the debt came from Young, and Young did not know the reasons Harris failed to schedule him as a Creditor. This factor weighs against a finding of nondischargeability.

The next factor is disruption to the courts, which focuses on "undue disruption" to courts' dockets. See *Stone*, 10 F.3d at 291. Besides Harris's amendment of her schedules to adequately list

Young as a Creditor[15], and the possibility of Young filing of a proof of claim outside of the appropriate time limitation, the Court does not see how either of those filings would disrupt this Court's docket as to warrant a nondischargeability determination. Finally, the last factor is prejudice to other creditors (both listed and unlisted), which, in combination with the first factor, is the "most critical". *Stone*, 10 F.3d at 291. Creditors are prejudiced only if "their rights to receive their share of dividends and obtain dischargeability determinations are compromised". *Id.* The Court finds that no Creditors will be prejudiced in Harris's bankruptcy case. To begin, Young made no argument regarding prejudice he or any other Creditor could suffer. Nevertheless, Harris is not making any distributions to unsecured Creditors in her chapter 13 bankruptcy case under the confirmed plan. Even more, the Court fails to see how Young would be prejudiced even if Harris would have listed him at the beginning of the bankruptcy case because unsecured Creditors are not receiving a distribution, and Young has been afforded the opportunity to assert a nondischargeability claim based on the same claims, albeit not under § 1328(a)(4), that would have been available prior to the expiration of the objection to discharge deadline.

After applying the *Robinson* factors, the Court finds that each factor weighs against a finding of nondischargeability as to the $6,000.00. In the end, the facts here amount to a mere failure to repay an unsecured debt. Yes, the Bankruptcy Code permits this Court to except debts from discharge based on the failure to schedule a Creditor who would have otherwise been able to participate in the bankruptcy case. But under Fifth Circuit precedent[16], this Court is bound to

---

[15] In the Fifth Circuit, debtors have a duty to complete their schedules accurately and a continuing duty throughout the pendency of their bankruptcy case to amend schedules and disclose potential claims. *In re Adams*, 481 B.R. 854, 858-59 (Bankr. N.D. Miss. 2012) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) and *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005)).

[16] The Court is certainly aware of other circuits which have adopted different approaches to the nondischargeability analysis under § 523(a)(3), and more specifically, § 523(a)(3)(A). Take

consider the equity and fairness regarding the practical impact of a debtor's failure to schedule a creditor. Here, the Court finds that Young would be in no better position as an unsecured Creditor than if he would have been scheduled and received notice at the beginning of Harris's bankruptcy case. This reality, in combination with the relevant law and prior Fifth Circuit precedent, supports the Court's legal conclusion that excepting Harris's debt from discharge is not warranted here.[17]

## IV.    CONCLUSION

Based on the above, the Court finds that Young holds a valid claim in the amount of $6,000.00 and is entitled to a judgment to that effect. However, Young failed to prove that Harris is liable for fraud or negligent representation, or that punitive damages are warranted. Further, because Young failed to meet his evidentiary burden regarding nondischargeability under § 523(a)(3) (and by extension § 523(a)(2)(A) or even § 1328(a)(4)), Young is not entitled to a nondischargeability judgment, and the $6,000.00 claim is subject to discharge.

---

for example, the strict construction approach adopted by the Bankruptcy Appellate Panel for the Ninth Circuit, which has taken the position that there are no equitable considerations as to why debtors fail to schedule creditors, or the lack of prejudice creditors may suffer for the debtor's failure to list a creditor. *In re Menaker*, 603 B.R. 628, 632-37 (Bankr. C.D. Ca. 2019) (discussing *Mahakian v. William Maxwell Invs., LLC (In re Mahakian)*, 529 B.R. 268 (9th Cir. BAP 2015). The Court is also aware that much of the case law which discusses § 523(a)(3)(A) is in the context of chapter 7 bankruptcy cases. Even so, many of the courts which have adopted the strict construction approach have addressed the "unfairness" of awarding a nondischargeability judgment under § 523(a)(3)(A) in the context of no-asset, no-bar date chapter 7 bankruptcy cases. While Harris's chapter 13 bankruptcy case did have a proof of claim deadline, unsecured Creditors are receiving no distributions under the confirmed plan. This Court sees a few parallels in a confirmed plan paying zero percent to unsecured creditors and a no-asset chapter 7 case, even though the possibility of future distributions is still present, however unlikely.

[17] Despite the Court's decision regarding nondischargeability, Young is still entitled to a judgment as to his state law breach of contract action. While not the outcome Young may have hoped, should Harris's bankruptcy case be dismissed prior to discharge, Young, like the rest of Harris's Creditors, would be able to exercise any collection rights available under state law.

In addition, based on the Court's factual findings and legal conclusions in this Memorandum Opinion and Order, it is hereby **ORDERED** that Harris shall amend all schedules or documents necessary to list Young as a prepetition Creditor. Under the Federal Rules of Bankruptcy Procedure, Rule 7058, making applicable Federal Rules of Civil Procedure, Rule 58, a separate judgment shall be issued in accordance with this Memorandum Opinion and Order.

##END OF ORDER##